**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | 2:22cr319 |
| | ) | **Electronic Filing** |
| **LESTER RONDALE MOORE** | ) | |

## <u>OPINION</u>

Presently before the court are defendant's 1) motion to suppress evidence and 2) motion for a hearing pursuant to <u>Franks v. Delaware</u>, 438 U.S. 156 (1978). For the reasons set forth below, the motions will be denied.

On December 20, 2022, a grand jury returned a two count indictment against defendant charging him at count one with possession with the intent to distribute 50 grams or more of methamphetamine, 40 grams or more of fentanyl, and a quantity of cocaine base, on or about October 10, 2022, in violation of 18 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), 841(b)(1)(A)(vi) and 841(b)(1)(C); and at count two with possession of a firearm and ammunition by a convicted felon, on or about October 10, 2022, in violation of 18 U.S.C. § 922(g)(1). Defendant first appeared before the court on January 30, 2023, and entered a plea of not guilty. He waived a detention hearing. On March 1, 2023, the government filed a receipt for Local Rule 16 material, which reflected the government's production of several categories of evidence, information, documents and forms which had been made available to defendant through defense counsel and/or produced in electronic format. <u>See</u> March 1, 2023, Receipt for Local Criminal Rule 16 Material (Doc. No. 20). Defendant was then provided access to the material at the Allegheny County Jail through the use of a computer. <u>See</u> Order of March 10, 2023.

As part of its initial Rule 16 production, the government produced an incomplete copy of the warrant allegedly issued and executed on October 10, 2022. The implications of and the

inferences to be drawn from this produced document became a point of contention between defendant and his first appointed counsel, Assistant Public Defender Andrew Lipson, to the point where it unduly strained the attorney-client relationship. See Motion to Withdraw (Doc. No. 25) and Hearing of May 2, 2023. Defendant was thereafter represented by Attorney Patrick Nightingale and then Attorney Stephen Capone. At defendant's direction, Attorney Stephen Capone filed a motion to withdraw appearance and to permit defendant to proceed with self-representation. A hearing was held on this motion on December 7, 2023. At the conclusion of that hearing, defendant agreed to proceed with new counsel, and Attorney Frank Walker was appointed to represent defendant.

Attorney Walker filed a motion to permit the adoption of a motion to dismiss that had been drafted by defendant. See Motion to Adopt (Doc. No. 49). The motion was granted and the motion to dismiss was filed. See Order of February 14, 2024 (Doc. No. 50) and Counsel-Adopted Motion to Dismiss (Doc. No. 51). Defendant then filed a motion to withdraw counsel and proceed *pro se*. See Doc. No. 52. Through a status report filed on March 26, 2024, Attorney Walker advised the court that the issues between defendant and counsel had been resolved. See Status Report of March 26, 2024. The motion to withdraw counsel was then denied as moot. Order of May 7, 2024 (Doc. No. 57). The government was ordered to file a response to defendant's motion to dismiss. Doc. No. 55.

Defendant filed a renewed motion to withdraw counsel and proceed *pro se*. Doc. No. 56. A hearing on the motion was set for May 21, 2024. At the parties' joint request, the hearing was continued until June 11, 2024. Doc. No.s 59, 60. Defendant filed a supplement to his motion to proceed *pro se* and the government filed its response to the motion to dismiss. Doc. No.s 61, 64. Defendant submitted a supplement to his motion to dismiss. Doc. No. 64. By order of May 17, 2024, the motion to dismiss was deemed to have been supplemented. Doc. No. 63.

After reviewing the government's response to the motion to dismiss, the court issued an order placing the United States on notice that the court was treating defendant's counsel-adopted motion to dismiss as including within it a motion to suppress all evidence derived from the search warrants referenced in the government's response to defendant's motion and the court directed the government to be prepared at the June 11, 2024, hearing to substantiate the existence, lawful authorization and lawful execution of the search warrants (as asserted to exist/be in the government's response – and to establish that the search warrant in this case "was a properly formatted and issued warrant, which was signed by a Pennsylvania magisterial district judge and accompanied by an affidavit of probable cause establishing the requisite basis for the warrant.").  See Order of May 24, 2024 (Doc. No. 65).

A hearing was held on June 11, 2024, on the motion to suppress portion of defendant's motion to dismiss.  At the hearing defendant insisted on proceeding with self-representation.  After being placed under oath and undergoing a Faretta/Jones colloquy, defendant knowingly, voluntarily and intelligently made an informed decision to proceed with self-representation.  Defendant's motions to proceed with self-representation were then granted from the bench and Attorney Walker was designated as stand-by counsel.

At the hearing the government proffered the testimony of Monroeville Police Officer Louis Cuccaro.  Officer Cuccaro testified as to his involvement with the applications for and procurements of the October 10, 2022, search warrants as well as emails he received as part of that process.  The government introduced a copy of the submitted application for the search warrant for 201 Cambridge Square Drive, Apartment F, Monroeville Pa, 15146, the application of a search warrant for a white Hyundai vehicle, and email received by Officer Cuccaro containing copies of the search warrants he received from the magisterial district judge following his submission of the applications to municipal court.

3

Defendant was permitted to conduct cross-examination of Officer Cuccaro and introduced a copy of the search warrant that lacked any information relating to the issuing authority (i.e., the date, name, signature or other identifying information related to the magistrate judge). Defendant also presented evidence that a signed warrant cannot be located in the Clerk of Courts of Allegheny County. Officer Cuccaro further admitted that he did not file the warrant return with the Allegheny County Clerk of Courts, which was contrary to the customary practice.

At the conclusion of the hearing, the court ordered the hearing testimony to be transcribed and directed the parties to submit post-hearing submissions summarizing their respective positions. Defendant's additional motion to amend/correct his motion to dismiss was granted. Doc. No. 78. Defendant also filed a motion for discovery/additional evidence. Doc. No. 74.

The transcript was filed on July 16, 2024. After the court directed standby counsel to provide defendant with a copy of the transcript, defendant filed a motion for the reappointment of counsel, proclaiming that he lacked the skills to represent himself effectively. A hearing on the motion was held on August 8, 2024. At the hearing the court granted the motion and appointed defendant's current counsel, Attorney D. Robert Marion. Doc. No. 81, 82. The briefing schedule and the pretrial motions deadlines were extended to provide sufficient time for Attorney Marion to become familiar with the record and make informed decisions in representing defendant.

Attorney Marion has filed two additional motions on defendant's behalf: a motion to compel grand jury testimony and a motion for a hearing pursuant to Franks v. Delaware. Doc. No.s 91, 99. A hearing was held on May 8, 2025, on defendant's motion for a Franks hearing.

In his motion to dismiss, defendant asserts that Officer Cuccaro and the Monroeville Police did not have a warrant issued by a magistrate judge when they conducted a search of the

apartment and the Hyundai vehicle on October 10, 2022. This supposedly was confirmed because the warrants in the government's proffer of "Rule 16 material," that is, the material the government intends to use against the defendant, were "blank." As a result, the contraband that was seized during the searches was obtained in violation of defendant's Fourth Amendment rights. That contraband was thereafter presented to the grand jury and used to obtain the pending indictment. And the subsequent version of the warrant that appears to be authorized assertedly was obtained after the fact. Defendant thus maintains that there was "a constitutional violation of [his] 4th Amendment [rights], an unreasonable search due to the fact [that] its execution was upon an invalid search warrant." Motion to Dismiss (construed as a motion to suppress) (Doc. No. 51) at p. 2, ¶¶ 6, 10.

In addition, defendant maintains that Attorney Lipson breached the attorney-client relationship and caused defendant prejudice when he revealed to the prosecutor defendant's strategy of intending to challenge the legality of the searches and the resulting indictment based on the existence of the blank warrants and the lack of authorization when the searches occurred. Id. at ¶ 12, p. 4, ¶ 21. This purportedly violated defendant's Sixth Amendment rights. Id. at p. 4, ¶ 21. In addition, the government's attempt to bypass the implications of the blank warrants by producing the authorized warrants after the fact reflects prosecutorial misconduct in violation of Brady. Id. at ¶ 22, p. 5 ¶29.

Finally, defendant asserts there are major discrepancies and inconsistencies in the subsequently produced warrants. Id. at p. 5, ¶ 30. "The documents lack a time stamp from the Clerk of Courts to indicate the judicial document was actually filed." Id. "Federal Rule[] of Criminal Procedure 41 and Pennsylvania Rules of Criminal Procedure 210 both authorize the return of a search warrant to ensure the validity of every search warrant issued." Id. "There is no warrant control number assigned or associated with the [signed] search warrant to locate and

identify the warrant, there is no sealed stamp[] on the warrant, which is required under Pennsylvania Rules of Criminal Procedure 205 to certify the issuance and authorization of every warrant."  Id.  And "the affidavit is not incorporated in the search warrant."  Id. at p. 6, ¶31. Finally, defendant asserts that "Leah Williams Duncan is the alleged signature on the [authorized] warrant, but the district magistrate number on the search warrant is issued to Kimberly Berkley Clark.  The wrong verification of the judge's information makes the search warrant [] all the more fraudulent."  Id. at p.6, ¶ 33.

Based on the above, defendant seeks "an order prohibiting the federal government from entering any evidence, including all physical evidence and all statements obtained as a result of the violations of the claims specified in" Document 51, the counsel-adopted motion to dismiss/suppress.

Defendant's current counsel supplemented defendant's motion to suppress.  In this filing defendant further argues that the two versions of the search warrant provided by the government show "evidence of intentional and deliberate disregard of the requirements of Rule 41." Supplement to Defendant's Pending Motions (Doc. No. 90) at p. 2.  Defendant further posits: "[t]here are two versions of the search warrant at issue in this case."  Id.  The first was provided by the Government in its Rule 16 materials and it "lacks any information related to the magistrate judge that allegedly issued the warrant.  There is no date, name, signature, or any other identifying information related to the magistrate.  Thus, the warrant clearly violates the Rule 41 requirement that an issued warrant identify the magistrate where the return is to be sent." Id.

The other version of the warrant was presented at the suppression hearing and it does have the magistrate information.  "Officer Cuccaro testified that this version of the warrant was

e-mailed to him by a clerk in Allegheny County after he swore out the warrant over the phone."
Id. at p. 3 (citing Suppression Transcript (Doc. No. 75), p. 36-38). But defendant has presented
evidence that this supposedly signed warrant cannot be located in the Clerk of Courts of
Allegheny County, id. (citing Suppression Transcript, p. 54), and Officer Cuccaro admitted that
the warrant return was never filed with the Allegheny County Clerk of Courts. Id. (citing
Suppression Transcript at p. 50).

 In summary, defendant contends:

> the police used an unsigned warrant to search the apartment. The unsigned warrant was
> initially provided to the Government by the state authorities. In addition, neither the
> signed warrant, nor the return, is located with the Clerk of Courts of Allegheny County.
> Finally, the alleged signed warrant lacks a warrant control number. All of this suggests
> that the signed warrant was obtained later and was not used to search the apartment. As
> such, there is evidence that the police deliberately and intentionally disregarded the
> requirements of Rule 41 and searched the apartment with an unsigned warrant. Such
> disregard justifies suppression of all evidence seized as a result of the search.

Id. at p. 3.

 Defendant further argues that the warrant was not supported by probable cause. In this
regard the affidavit referenced numerous cooperating individuals but failed to provide any
insight as to the specific information they conveyed and lacked information corroborating
what they said or any circumstances bearing on their reliability or credibility. The affidavit
likewise failed to provide information bearing on the credibility or reliability of the neighbors
and residents who supposedly had made statements about defendant to the officers and/or the
individuals who supposedly had filed complaints against defendant.

 Defendant also asserts that the affidavit contained misleading statements which
provide grounds for relief under Franks v. Delaware, 438 U.S. 156 (1978). First, the affidavit
indicated that a known narcotics user was observed parking in front of 201 Cambridge Square
Drive and heading "towards apartment F." This statement is asserted to be misleading
because to reach apartment F one would have to walk down a sidewalk, go through a door,

walk up a set of steps, go through another door, and travel down a hallway which has doors to three other apartments. The statement thus implies the narcotics user was observed traveling to apartment F when the authors had not observed where the individual had gone within the apartment building.

Second, the affidavit indicated the officers approached apartment F and knocked on the door to see what would happen. This was misleading because Officer Cuccaro indicated at the suppression hearing that the officers' purpose in going to the apartment was to arrest defendant. This statement was thus misleading and fails to support probable cause.

As a result, defendant posits that the misleading aspects of the affidavit supply grounds for further inquiry under <u>Franks</u>. And they render the affidavit lacking in probable cause in any event.

The government contends that the record as now developed demonstrates that the October 10, 2022, warrants were authorized by a magisterial district judge. And while the record does reflect two separate documents involving the warrant, this purported difference merely reflects the officer's initial application for the warrant and the authorized warrant that was received following its judicial approval. Further, the affidavit accompanying the request for issuance of a warrant contained more than sufficient information to establish probable cause and the good faith exception precludes suppression of the seized evidence in any event. Finally, defendant assertedly has failed to establish that any statement in the affidavit was false and the purported inaccuracies did not undermine the showing of probable cause presented in the applications. Thus, the government maintains that defendant's multiple challenges to the warrants do not provide a basis for suppression of the evidence gathered and seized on October 10, 2022, by Officer Cuccaro and the Monroeville Police.

The record demonstrates that during the evening hours of October 10, 2022, Officer Cuccaro obtained judicially authorized warrants to search 201 Cambridge Square Drive, Apartment F, in Monroeville, Pennsylvania, and the white Hyundai Elantra defendant was driving. After conducting an investigation and surveillance, Officer Cuccaro prepared an affidavit and electronically submitted applications for the warrants to the Pittsburgh Municipal Court around 10:00 p.m. that evening. Submitting the applications to that court was the established procedure to be followed when the local magisterial district judge was not available, which was the case given that it was after 10:00 p.m. in the evening. Officer Cuccaro signed the application when he submitted it, which is reflected in and accounts for the "blank" copy of the warrant with which defendant has become focused. Officer Cuccaro then emailed the Clerk of Court and thereafter received a telephone call from Magisterial District Judge Leah Williams-Duncan. Officer Cuccaro swore to the contents of the applications before Judge Williams-Duncan on the telephone. Magisterial District Judge Leah Williams-Duncan then authorized the warrants by checking the box indicating she was a Magisterial District Judge, affixing her signature on the warrants and supplying the date and time she signed them, the applicable magisterial district number and the date her commission was set to expire. Officer Cuccaro then received the warrants from the Clerk of Court. And he verified through an email exchange that he actually had received copies of the judicially approved warrants before conducting the searches of the apartment and vehicle.

It follows that defendant's contentions that the warrants were not executed (i.e., blank) and/or that the officers acted without judicial authorization when they conducted the searches are misplaced. The warrants were authorized by Magisterial District Judge Williams-Duncan and received by Officer Cuccaro prior to the searches of 201 Cambridge Square Drive,

Apartment F, in Monroeville, Pennsylvania, and the white Hyundai Elantra. There is no basis to suppress pursuant to these aspects of defendant's motions to suppress.

Defendant's position that the warrants were not supported by probable cause also is misplaced. To the contrary, the affidavit prepared and submitted by Officer Cuccaro contained more than sufficient information to establish probable cause.

It is well-established that the role of a reviewing court in analyzing an issuing judge's initial probable cause determination is to assess whether the issuing judge had a substantial basis for concluding that probable cause existed. Illinois v. Gates, 462 U.S. 213, 238 (1983). The United States Court of Appeals for the Third Circuit has explained that "[reviewing courts] are constrained to determine only whether the affidavit provides a sufficient basis for the decision the issuing judge actually made" and must refrain from engaging in *de novo* review as to whether probable cause actually existed. United States v. Jones, 994 F.2d 1051, 1057 (3d Cir. 1993) (recognizing that reviewing courts must refrain from making their own assessment as to probable cause). If a substantial basis for the issuing judge's determination exists, then that finding must be upheld notwithstanding the fact that "a different [issuing] judge might have found the affidavit insufficient to support a warrant." United States v. Conley, 4 F.3d 1200, 1205 (3d Cir. 1993).

An issuing judge's finding of probable cause "should be paid great deference by reviewing courts." Gates, 462 U.S. at 236 (quoting Spinelli v. United States, 393 U.S. 410, 419). This is not to say, however, that reviewing courts should simply "rubber stamp [an issuing judge's] conclusions." United States v. Whitner, 219 F.3d 289, 296 (3d Cir. 2000). Case law makes clear that this deferential standard urges that "the resolution of doubtful or marginal cases in this area [ ] be largely determined by the preference to be accorded to warrants." Jones, 994 F.2d at 1055 (citing United States v. Ventresca, 380 U.S. 102, 109 (1965)); see also United

States v. Stearn, 597 F.3d 540 (2009) (acknowledging the Supreme Court's direction that cases which present close calls should be resolved in favor of upholding the warrant) (citing Gates, 462 U.S. at 237 n.10).

A search warrant is supported by probable cause when the attached affidavit sets forth sufficient facts and circumstances to justify a reasonable belief that a search of the specified premises will uncover evidence of criminal wrongdoing. See, e.g., United States v. Deaner, 1 F.3d 192, 196 (3d Cir. 1993) (citing Illinois v. Gates, 462 U.S. 213, 236 (1983)).

In assessing whether probable cause exists, an issuing judge must "make a practical, common-sense decision" that there is a "fair probability that . . . evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238. The Supreme Court has described probable cause as a "fluid concept-turning on the assessment of probabilities in particular factual contexts." Id. at 232. Probable cause does not require direct evidence linking the crime with the place to be searched. Stearn, 597 F.3d at 554 (opining that while it would be ideal for every affidavit to contain direct evidence, a magistrate may issue a search warrant without it). Courts have recognized that probable cause "can be, and often is, inferred from 'the type of crime, the nature of the items sought, the suspect's opportunity for concealment and [the] normal inferences about where a criminal might hide [evidence].'" Id. at 554 (citing Jones, 994 F.2d at 1056 (quoting United States v. Jackson, 756 F.2d 703, 705 (9th Cir. 1985)).

When analyzing the existence of probable cause, the focus must be on "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Gates, 462 U.S. at 231 (probable cause is a "practical, nontechnical conception"). The issuing judge must use common-sense and read the supporting affidavit in its entirety. Conley, 4 F.3d at 1206 ("[S]tatements in an affidavit may not be read in isolation-the affidavit must be read as a whole."). An issuing judge is permitted to make reasonable

inferences from the information in the warrant application.  United States v. Loy, 191 F.3d 360, 366 (3d Cir. 1999) ("In making the probable cause determination, the issuing magistrate may draw reasonable inferences from the material provided in the warrant application.") (quoting United States v. Rowland, 145 F.3d 1194, 1205 (10th Cir. 1998)).  The issuing judge also is entitled to give "considerable weight to the conclusions of law enforcement officers with regard to where evidence of a crime is likely to be found . . . ."  Whitner, 219 F.3d at 296 (quoting United States v. Caicedo, 85 F.3d 1184, 1192 (6th Cir. 1996)).

The affidavit supplied a substantial basis for Judge Williams-Duncan to conclude that sufficient facts and circumstances had been presented to raise a fair probability that evidence of drug trafficking would be found in the apartment and vehicle.  First, Officer Cuccaro set forth his experience in law enforcement and training in narcotics interdiction.  That experience spanned ten years as a police officer and basic courses and trainings in drug trafficking investigations as well as an intimate familiarity with hundreds of narcotic investigations.  These investigations had resulted in numerous convictions for drug distribution.  Affidavit of Louis Cuccaro of October 10, 2022 (Doc. No.s 61-1, 70-1) at p. 2.

Officer Cuccaro indicated that on May 23, 2022, an investigation was started that was focused on defendant.  "Numerous cooperating individuals" indicated defendant was bringing "large quantities of heroin, crack cocaine and cocaine from Columbus, OH," and selling the drugs out of Cambridge Square apartments.  An NCIC check indicated defendant was on Ohio state parole for weapons and drug trafficking offenses.  Id.

Officer Cuccaro and Detective Maritz received complaints from neighbors and residents of the apartment complex that defendant was "meeting with and selling narcotics to drug users in the areas of 201 Cambridge Sq. Dr. and 144 Cambridge Sq. Dr."  Two known cooperating

individuals reported that defendant had pointed a handgun at them and they had seen him in possession of a firearm with a silencer and a firearm with a laser.  Id.

On September 27, 2022, another NCIC search revealed that defendant had an active warrant for his arrest and was identified as armed and dangerous.  Cooperating individuals advised that defendant was staying with "Tracey" at 201 Cambridge Square Drive, apartment F. Investigation revealed that "Tracey Trifanoff" was a resident of that apartment and Officer Cuccaro had observed defendant "coming and going" from the apartment.  Id.

On October 10, 2022, Officer Cuccaro received information from a cooperating individual that defendant had recently returned from Ohio, was staying with "Tracey," and had been observed inside 201 Cambridge Square Drive, apartment F, earlier that day.  Id.  Officer Cuccaro undertook surveillance of the apartment complex and observed a known narcotics user park in front of the building and head in the direction of apartment F.  The individual returned to his car a few minutes later, which Officer Cuccaro recognized as being consistent with a drug transaction.  Id. at p. 3.

Officer Cuccaro followed the narcotics user and initiated a stop after observing the user commit a traffic violation.  After interacting with the individual, Officer Cuccaro conducted a pat down which led to the recovery of a small plastic baggie of suspected crack cocaine from the individual.  "The male advised [Officer Cuccaro] that he just purchased the crack cocaine from a male he knows as 'Rondale' from Cambridge Sq."  Rondale is defendant's middle name.  The male specifically identified the purchase site as apartment F at 201 Cambridge Square Drive, which was the location where Officer Cuccaro had just observed the individual immediately preceding the stop.  The individual verified that "Tracey," "Rondale" and another black female were in the apartment.  Id.

Officer Cuccaro and others then decided to "do a knock and talk" at the apartment.  After listening and then announcing their presence, Tracey answered the door.  Defendant exited the rear room of the apartment and was directed to come to the front door, which he did.  Defendant was taken into custody.  Id.

Questioning of the other female in the apartment, identified as Jakeia Perminter, revealed that she was defendant's girlfriend and that she and defendant occasionally stayed in the apartment.  She acknowledged that the white Hyundai vehicle in the parking lot was hers and that defendant had been in it earlier in the day.  A trained canine thereafter gave a positive alert to the presence of narcotics on rear passenger door of the white Hyundai.  Id.

Tracey acknowledged that she permitted defendant to "stay in her apartment and he usually brings a safe, but he hides it in the back room."  Narcotics paraphernalia was recovered from Tracey's purse.  Tracey later revealed that when she sought to purchase narcotic from defendant, "he would go to the safe, open the safe and get her order, being narcotics."  She knew defendant to always carry the safe with him, and the safe was somewhere within her apartment. She had witnessed defendant with a pistol earlier in the day, advised that he always carried the pistol on him and believed the pistol was in the apartment as well.  Id.

Officer Cuccaro reported that the use of safes by drug traffickers to secure drugs and drug proceeds was consistent with his training and experience, and past experience had resulted in the recovery of such evidence and contraband from the searches of safes.  In addition, a criminal history check had revealed that defendant had numerous weapons and drug trafficking convictions out of Ohio.  Id.

Based on the above, Officer Cuccaro opined:

Your Affiant believes probable cause exists to believe contraband, specifically crack cocaine, scales, narcotics proceeds, such as U.S. Currency and the firearm will be located inside of 201 Cambridge Sq. Dr. apartment F, along with the incident vehicle, a white

Hyundai bearing PA registration LZG8313.  I am requesting a search warrant be granted for [the apartment and the vehicle].

Affidavit of Louis Cuccaro (Gov. Ex. No. 1, Doc. No. 70-1) at p. 3.

Defendant's contention that the warrant lacked probable cause because it rests on unreliable hearsay which tainted the entire affidavit is shortsighted.  The affidavit does indicate that numerous cooperating individuals had advised that defendant was transporting large amounts of narcotics from Columbus, Ohio, and selling them out of the Cambridge Square apartment complex.  And it does not provide further detail about these individuals or their credibility, reliability or accuracy.  But it does not follow that the information conveyed by these individuals was not corroborated or independently found to be credible.

What defendant conveniently overlooks is that Officer Cuccaro's months-long investigation of defendant had independently confirmed and corroborated the general information conveyed by the "numerous cooperating individuals."  First, neighbors and residents of the apartment complex had complained to the investigating officers that defendant appeared to be engaging in drug sales in and around the apartment complex.  During the course of the investigation Officer Cuccaro witnessed a known narcotics user enter and leave the apartment building in a manner consistent with a drug transaction occurring in apartment F.  A subsequent stop of the individual uncovered crack cocaine that the individual admitted was purchased from "Rondale" in apartment F of the Cambridge Square apartment building.  The individual also indicated that Tracey and another female were in the apartment with defendant.

Second, another individual indicated defendant was staying with "Tracey" when he was at the Cambridge Square apartment complex.  Officer Cuccaro independently verified that Tracey Trifanoff was an individual who was residing in apartment F and observed defendant coming and going from the apartment building containing apartment F.  Another

individual indicated that on October 10, 2022, defendant had just returned from Columbus with narcotics and was seen in the apartment. Surveillance and a traffic stop revealed that defendant had just sold suspected crack cocaine to a known narcotics user and the transaction had occurred in apartment F. Upon knocking on the apartment door following the seizure of crack cocaine from the known narcotics user who was seen entering the apartment building in a manner consistent with entering apartment F and engaging in a drug purchase, Tracey answered the door and defendant was observed coming out of the back room. These aspects of the investigation corroborated what the cooperating individual originally had conveyed.

Third, a criminal background check of defendant provided some corroboration of the information from the cooperating individuals who had reported that defendant was transporting large quantities of drugs from Columbus, Ohio. Defendant had prior convictions for weapons and drug trafficking offenses and was on parole for such offenses. His prior offenses and terms of parole were all out of Ohio.

Fourth, Officer Cuccaro's investigation corroborated the information conveyed by the cooperating individual who indicated on October 10, 2022, that defendant had just recently returned from Ohio, was staying at Tracey's, and was observed inside 201 Cambridge Square Drive, apartment F on that day. Through surveillance, a traffic stop resulting in statements identifying defendant as the source of recently acquired crack cocaine, a knock and talk, and the questioning of the other occupants of the apartment, Officer Cuccaro was able to confirm the accuracy of the information conveyed.

These independently gained facts and circumstances provided objective grounds to give credence to other aspects of the cooperating individuals' accounts of defendant's criminal activities. See Alabama v. White, 496 U.S. 325, 331 (1990) (Where "an informant is shown to be right about some things, he is probably right about other facts that he has alleged, including

the claim that the object of the tip is engaged in criminal activity.") (citing <u>Gates</u>, 462 U.S. at 244); <u>United States v. Johnson</u>, 592 F.3d 442, 450 (3d Cir. 2010) ("The reliability of an informant's tip can be enhanced further by independent police corroboration of the information provided."); <u>United States v. Barnes</u>, 2005 U.S. Dist. LEXIS 15889, *12 (E.D. Pa. Aug. 4, 2005) ("It is well-established that the veracity of some assertions made by an anonymous source can 'indicate[], albeit not with certainty, that the informant's other assertions also were true. Because an informant is right about some things, he is more probably right about other facts.'") (quoting <u>Gates</u>, 462 U.S. at 244 (quoting <u>Spinelli v. United States</u>, 393 U.S. 410, 427 (1969) (White, J., concurring)). Thus, Officer Cuccaro's investigation confirmed much of the information gained from the cooperating individuals and neighbors and residents and the totality of the information presented was far more than a bare-bones tip from an individual who had no proven track record. In other words, the totality of the information provided sufficient corroboration of the general tips and information received and reflected the existence of probable cause in the affidavit.

Moreover, Officer Cuccaro's gained understanding of defendant's criminal history provided additional information that properly was considered by the magisterial district judge. It is well settled that consideration of such information can supply additional facts that support a determination of probable cause, particularly where the past criminal conduct is indicative of the current suspected criminal activity. <u>See</u> <u>United States v. Stearn</u>, 597 F.3d 540, 557 (3d Cir. 2010) ("The affidavit reported that [one of the co-defendants] had two such arrests. That information corroborated the informant's allegations about [that co-defendant] and [another co-defendant] because '[t]he use of prior arrests . . . is often helpful' to establish probable cause, particularly where 'the previous arrest or conviction involves a crime of the same general nature as the one which the warrant is seeking to uncover.'") (quoting <u>Conley</u>, 4 F.3d at 1207). Defendant's prior convictions for weapons and drug-trafficking offenses thus supplied additional

affirmative information from which the judge could conclude many of the statements by the cooperating individuals and neighbors were at least in part corroborated and there was an adequate showing of probable cause.

Finally, the magisterial district judge properly could place considerable weight on Officer Cuccaro's determination that probable cause existed to issue the requested warrant. It is well settled that an "issuing judge or magistrate may give considerable weight to the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." United States v. Whitner, 219 F.3d289, 296 (3d Cir. 2000) (quoting United States v. Caicedo, 85 F.3d 1184, 1192 (6th Cir. 1996). Officer Cuccaro had ten years of experience that included hundreds of investigations concerning narcotics operations. He indicated in the affidavit that in his professional opinion the presented information provided probable cause for a warrant to search 201 Cambridge Square Drive, apartment F, as requested. The magisterial district judge agreed.

Taken as a whole, the information provided by the cooperating individuals, the numerous aspects of that information that independently were corroborated by the officers, the apprehension of an individual who admitted to just purchasing suspected crack cocaine from defendant in apartment F, defendant's prior criminal history and Officer Cuccaro's experienced assessment provided more than sufficient information from which Judge Williams-Duncan could reach a determination that probable cause existed to believe defendant was engaged in drug trafficking at the apartment, had weapons under his control at that location and evidence of this criminal activity would be located in the apartment and the white Hyundai Elantra. Defendant's arguments that components of the affidavit lacked sufficient corroboration and/or the affidavit

lacked probable cause are unconvincing and the motion(s) to dismiss/suppress on these grounds will be denied.

Defendant's efforts to gain suppression of the evidence seized pursuant to the warrants based on the officers' failure to return the warrant to the issuing magistrate as required by Federal Rule of Criminal Procedure 41(f)(1)(D) and/or Pennsylvania Rule of Criminal Procedure 210 fall short. Defendant highlights that there is no record of the warrants being returned as required by the Pennsylvania Rules of Criminal Procedure and the warrants do not have a "Warrant Control Number." And as a result, there is no judicial record of the warrants ever being issued.

It was long ago settled that in this jurisdiction, a government agent's failure to file a search warrant return in violation of Rule 41(f)(1)(D) does not in itself give rise to a right to have the seized evidence suppressed. United States v. Hall, 505 F.2d 961, 964 (1974) (Aldisert, J.). Instead, suppression is an appropriate remedy only "where a sufficient showing of prejudice is made, that is, prejudice in the sense that it offends concepts of fundamental fairness or due process." Id.

Here, defendant has failed to show any actual prejudice from the officers' failure to file a return with the Clerk of the Pittsburgh Municipal Court. And his contentions that there was not a crime or criminal conduct if the warrant was procedurally defective is not accurate. There exists a sound basis to find/rule 1) there was evidence of criminal conduct obtained by the warrants, 2) whose warrants were obtained and executed without violating defendant's rights, and 3) sufficient proof of the existence and validity of the warrants was developed at the suppression hearing. And the court so finds and rules. Accordingly, defendant's reliance on the technical failure of the officer to return the warrants and/or obtain a warrant control number are unavailing and his motion to suppress on these grounds will be denied.

Defendant's arguments that the seized evidence is subject to suppression pursuant to Franks v. Delaware likewise lacks merit.  In Franks, the Supreme Court recognized the right of a defendant to challenge a law enforcement officer's statements made in an affidavit submitted in support of a warrant.  Id. at 155-56.  This right is limited to challenging a "false statement knowingly and intentionally [made], or [made] with reckless disregard for the truth, [that] was included by the affiant in the warrant affidavit."  Id.   And relief in the form of suppression is limited to situations where the inclusion of such a statement is material to the finding of probable cause.  Id. at 156.

In Franks, "the Court created a mechanism to allow a defendant to overcome the general presumption that an affidavit of probable cause supporting a search warrant is valid."  United States v. Yusuf, 461 F.3d 374, 383 (3d Cir.2006) (citing Franks, 438 U.S. 154, 98 S. Ct. 2674 (1978)).  In doing so, the Court limited its application to those situations where false statements or those made with reckless disregard for the truth are deliberately interjected into the warrant application process for the purpose of distorting or manipulating the information being considered by the judicial officer.  Cf. Franks, 438 U.S. at 156 ("In the event that at that hearing the allegation of *perjury or reckless disregard* is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.") (emphasis added).

This principle also extends to material omissions.  United States v. Frost, 999 F.2d 737, 742-43 (3d Cir. 1993).  In this setting, "(1) omissions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know; and (2) assertions are made with reckless disregard for the truth when an

officer has obvious reasons to doubt the truth of what he or she is asserting." Wilson v. Russo, 212 F.3d 781, 783 (3d Cir. 2000). Again, the inquiry is concerned with an intentional distortion of the information being given to the judicial officer in an effort to create probable cause where it would not otherwise exist. Cf. Frost, 999 F.2d at 743 ("Thus, in order to secure suppression of the fruits of the search, a defendant must show both that bad faith or reckless disregard existed on the part of the affiant, and that there would have been no probable cause but for the incorrect statement."); Hawkins v. Gage County, Nebraska, 759 F.3d 951 (8th Cir. 2014) ("To prove a 'reckless disregard' [the defendant] must show that the omitted material would be clearly critical to the finding of probable cause.") (quoting United States v. Jacobs, 986 F.2d 1231, 1235 (8th Cir.1993)).

        In Franks, the Supreme Court specifically held that the Fourth Amendment requires an evidentiary hearing to be held at the defendant's request when:

> a defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

438 U.S. at 155-56. "[A] substantial preliminary showing of intentional or reckless falsity on the part of the affiant must be made in order for the defendant to have a right to an evidentiary hearing on the affiant's veracity." Id.

        To make the required preliminary showing, the defendant must show intentional or reckless falsity on the part of the affiant, and "cannot rest on mere conclusory allegations . . . but rather must present an offer of proof contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements of witnesses." United States v. Yusuf, 461 F.3d 374, 383 n.8 (3d Cir. 2006). If the defendant makes this preliminary showing, the court has the discretion to hold a Franks hearing and permit a further challenge to the affidavit.

If the defendant makes the requisite substantial showing and then, at that hearing, shows by a preponderance of the evidence that material statements in the affidavit are either recklessly or intentionally untruthful, the fruits of the search must be excluded unless the remaining content of the warrant is sufficient to establish probable cause. Franks, 438 U.S. at 155-56.

It is well-established that a substantial showing of the informant's untruthfulness is not sufficient to warrant a Franks hearing. The Supreme Court made clear throughout Franks that a substantial preliminary showing of intentional or reckless falsity on the part of the affiant must be made in order for the defendant to have a right to an evidentiary hearing on the affiant's veracity.

Ultimately, to obtain relief under Franks, a defendant must prove by a preponderance of the evidence that probable cause does not exist under the corrected affidavit. The Court of Appeals for the Third Circuit has recognized a distinction between misrepresentations and omissions for purposes of determining whether deficiencies in the affidavit are "material." When faced with an affirmative misrepresentation, the court is required to remove the false statement from the affidavit. In contrast, when faced with an omission, the court must remove the "falsehood created by an omission by supplying the omitted information to the original affidavit." Yusuf, 461 F.3d at 383-84.

At the hearing held on May 8, 2025, defendant advanced three grounds for relief under Franks. First, Officer Cuccaro's indication in the affidavit that the known drug user enter into 201 Cambridge Square towards apartment F assertedly is misleading because it suggests the officers had observed the individual's movements once inside the building when in fact the officers could not have known where the individual traveled after he entered the front door of the building. To get to apartment F, the individual would have had to walk through a couple of sets of doors, travel down a set of stairs, and traverse down a hallway with entranceways to other

apartments.  Second, the officers did not plan to do a "knock and talk" when they approached apartment F; to the contrary, they planned on arresting defendant.  Officer Cuccaro testified that they knew there was an active warrant for defendant and indicated they intended to arrest him when they went to apartment F after the traffic stop.  Third, the affidavit indicated that Trifanoff relayed that defendant carried the safe in his backpack and would hide it in the back bedroom; defendant would get drugs for Trifanoff from the safe; and defendant always carried a firearm. None of these statements were included in the police report and were only included in the affidavit.

Defendant has failed to show that the preliminary requirements for an evidentiary hearing under Franks have been satisfied.  First, while defendant has presented arguments that Officer Cuccaro could have supplied more detail about the limitations of his observations regarding the known narcotics user approaching 201 Cambridge Square and entering the building, the statement that the known drug user "exit[ed] his vehicle and enter[ed] into 201 Cambridge Sq[uare] towards apartment F" and "exit[ed] the apartment" within a few minutes was not false or misleading.  It is clear from a reading of the affidavit that Officer Cuccaro was conducting surveillance from a vantage point where he could see the individual "park in front of 201 Cambridge Sq. Dr."  This necessarily conveyed that officer Cuccaro was able to observe the outside of the building and the parking lot.  Reporting an individual parked and headed "toward" apartment F did not convey that the individual was observed entering and exiting apartment F.  It merely indicated that the course of observed travel was consistent with doing so.  And further indicating that the individual exited within a few minutes was particularly probative of the short duration of a drug transaction.  Including the additional information regarding the necessary details about how one would have to travel to reach apartment F neither makes the challenged statement false or misleading nor diminishes its probative force as it relates to the finding of

23

probable cause. Further inquiry into Officer Cuccaro's veracity pursuant to this challenge is not warranted.

Defendant's challenge centered around the officers' intent to conduct a "knock and talk" equally is unavailing. Investigation had confirmed that apartment F was rented to Tracey Trifanoff. The officers did not have an active warrant for her arrest. They likewise did not have probable cause to arrest her; after all, the information generated from the investigation indicated that defendant was the one distributing narcotics from apartment F. So the officers had insufficient grounds simply to enter the apartment and arrest defendant. In other words, the immediately available recourse was to knock and talk to whoever answered the door, which is what they did. The fact that they also had plans to arrest defendant when they approached the apartment does not make the statements regarding the planned "knock and talk" false or misleading; nor does the inclusion of their dual motive detract or undermine the probable cause otherwise reflected in the affidavit. Additional inquiry as to the intent to arrest defendant is not warranted.

Finally, defendant's efforts to find discrepancies between the police report by Officer Maritz and Officer Cuccaro's affidavit lack persuasive merit. The Maritz report indicated the Trifanoff had spoken to Officer Maritz about the safe defendant was reported to carry and she reported that she saw defendant with the safe that day and it had drugs in it. She also reported that she had seen defendant with a firearm that day.

Defendant focuses on the additional information in the affidavit that defendant carried the safe in a backpack and hide it in the back room; defendant would get drugs for Trifanoff from the safe; and that defendant always carried a firearm, and he asserts this information was not included in Officer Maritz's report. But this position is inaccurate. Trifanoff had told Maritz that defendant had a safe, it was in her apartment and she had seen drugs in the safe

24

that day.  She also said defendant's firearm was in her apartment.  Report of Officer Maritz

(Doc. No. 99-2) at p. 1.[1]

Moreover, the additional information of which defendant complains was included in

Officer Cuccaro's report.  See Report of Officer Cuccaro (Doc. No. 99-1) at p. 2 ("While on

scene, Trifanoff admitted that she allows [defendant] to stay in her apartment and he usually

brings a safe, inside of a book bag.  She stated that she did not know what is in the safe, but he

hides it in the back bedroom.).  Officer Maritz likewise noted that at the Police Station

Trifanoff reported that defendant carried "a safe with him and/or a bookbag."  Report of

Officer Maritz (Doc. No. 99-2) at p. 1.

In short, when read together, the reports of Officer Cuccaro and Officer Maritz include

the information reported to have been supplied by Trifanoff.   The officers recount statements

that she made at different points during their interaction with her.  Trifanoff made certain

statements "while on the scene" that were memorialized by Officer Cuccaro.  Officer Cuccaro

noted in his report that "Trifanoff later advised Detective Maritz that in the past when

purchasing narcotics from 'Rondale' he would go to the safe, open the safe and get her order,

being narcotics."  It is thus clear that the officers interacted with Trifanoff at different times

after securing the apartment and were not always together when they did so.

The reports reflect statements by Trifanoff that are consistent with Officer Cuccaro's

affidavit.  A false or misleading statement and/or omission has not been identified through

defendant's reference to Maritz's report.  And even assuming that the identified additional

information should be excluded from the affidavit, the remaining information sufficiently

---

[1]  In the report Officer Maritz indicated that later at the Monroeville Police Station "[Trifanoff]
said [defendant] always had a safe with him, and saw him numerous times retrieving drugs from
the safe for her."  She also advised that defendant "always carried the firearm in his pants or
under the pillow when he was sleeping."  Id.

25

establishes probable cause.  Further inquiry pursuant to identified discrepancies is not warranted.

The other grounds raised in defendant's motion to dismiss/suppress are meritless. First, Attorney Lipson did not violate any duty or obligation of confidentiality to defendant by explaining the bases for the breakdown in the attorney-client relationship.  The government always has the burden to establish that a valid and authorized search has occurred pursuant to the Fourth Amendment.  Defendant was entitled to require the government to meet its burden and he was afforded the appropriate process for doing so.  The fact that defendant intended to challenge the warrants as unauthorized was a necessary revelation in order to seek relief pursuant to the Fourth Amendment.  Defendant's Sixth Amendment rights have not been violated.

Second, the court has determined that the warrants were judicially authorized by Judge Williams-Duncan and the authorized warrants were received by Officer Cuccaro prior to the police conducting the searches of the apartment and vehicle.  As a result, the record lacks any basis to support defendant's assertions of forgery, manufacturing of evidence, malicious prosecution, ineffective assistance of counsel, conspiracy, or violations of Brady, Due Process, First Amendment Right of Access, the Fourteenth Amendment and so forth. Accordingly, defendant's motion to dismiss along these lines (as supplemented) will be denied.

For the reasons set forth above, defendant's motion to dismiss/suppress as supplemented and motion for a hearing pursuant to Franks v. Delaware will be denied.  An

appropriate order will follow.[2]

Date: May 16, 2025

                                        s/David Stewart Cercone
                                        David Stewart Cercone
                                        Senior United States District Judge


cc:    Jerome A. Moschetta, AUSA
       D. Robert Marion, Esquire

       United States Marshal's Office
       United States Probation Office

       (*Via CM/ECF Electronic Filing*)

---

[2] Defendant's motions for discovery and to obtain grand jury transcripts will be resolved by separate disposition.